UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

PAUL WHALEY, individually, and on behalf of all
Others similarly situated,

                                    Plaintiffs,

                                                            Civil Action No.

        - against -

THE VILLAGE OF FREEPORT, MICHAEL SMITH,          **CLASS ACTION COMPLAINT**
individually, JCB & SONS, INC.
d/b/a NON-STOP TOWING & RECOVERY
a/k/a NON-STOP TOWING a/k/a NON-STOP
TOWING AND RECOVERY, JEROME
BONOMO, individually, MATTHEW K. SERIDGE,          Jury Trial Demanded
individually and "John Doe" JEMERSON-OLIVER,
individually, the designation "John Doe" representing
a fictitious first name for the defendant whose actual
last name is Jemerson-Oliver.

                                    Defendants.

------------------------------------------------------------------------X

        Plaintiff Paul Whaley, by his attorneys, brings this Complaint against defendants the

Village of Freeport ("Freeport"), Michael Smith, JCB & Sons, Inc. d/b/a Non-Stop Towing &

Recovery a/k/a Non-Stop Towing a/k/a Non-Stop Towing and Recovery ("Non-Stop"), Jerome

Bonomo, Matthew K. Seridge and "John Doe" Jemerson-Oliver (collectively, "Defendants"),

and alleges as follows:


## I.    NATURE OF THIS ACTION

        1.    Under the false pretext of exercising its police power, the Village of Freeport

("Freeport") has monetized the warrantless seizures of motor vehicles in a highly lucrative

*seizure-for-profit and kickbacks* scheme.

2.     This scheme is being carried out as a joint operation by and between the Village of Freeport, its Police Chief (Defendant Michael Smith), JCB & SONS, INC. d/b/a Non-Stop Towing ("Non-Stop"), and Non-Stop's principal, Defendant Jerome Bonomo.

3.     Under this scheme, Defendant/Police Chief Michael Smith has directed all Freeport patrol officers to seize thousands of motor vehicles without a warrant, any judicial order, or any exception to the warrant requirement, so that the Defendants can thereafter extort the owners of such vehicles to pay the Defendants millions of dollars annually, under written threat that if they do not pay such sums "*within 10 days*" Freeport "will (*automatically*) acquire title to" their vehicles, which will then be "destroyed" (i.e., sold by the Defendants).

4.     At the time of each warrantless seizure, Freeport police call defendant Non-Stop to physically tow each seized vehicle from the place of seizure, and to then store same, until the Freeport Police Department authorizes Non-Stop to either release it, or sell it.

5.     Freeport then sends letters to the owners of such seized vehicles wherein Freeport explicitly threatens each respective owner, as follows:

> "*You are hereby notified that the above-described motor vehicle has been impounded by the Freeport Police Department. . . . You are liable for the costs of storage and removal of the said vehicle. . .*
>
> *The Village of Freeport shall acquire title to this vehicle unless claimed within ten (10) days of the above date. In such event, the vehicle will be destroyed."*

See Exhibit A.

6.      For vehicle owners to then "claim" their seized vehicles, the Defendants require the owners to pay: (a) sums which Freeport claims it is owed for unadjudicated parking summonses, and/or tickets for expired or suspended registrations which are not yet returnable before the Freeport Village Justice Court, *plus* (b) a $123.50 "Impound Fee," *plus* (c) exorbitant fees for towing and storage services, payable to Non-Stop, from which Non-Stop pays Freeport a $300.00 *per-tow kickback.*

7.      If the vehicle owners succumb to Freeport's unilateral demands by paying all of such amounts demanded within 10 days from the date of such letters, Freeport then issues a formal "Vehicle Release Authorization" wherein Freeport authorizes Non-Stop to release the vehicle back to the respective owner.

8.      True copies of Vehicle Release Authorizations wherein Freeport authorized Non-Stop Towing, and its other tow vendor, All County Towing, to release seized vehicles back to their owners, are collectively annexed hereto as Exhibit B.

9.      **But,** if the owners of such seized vehicles ***do not*** succumb to Freeport's demands within such 10 days, Freeport makes good on its threat to dispose of their vehicle, by authorizing Non-Stop to release each seized vehicle ***to itself***, to sell it, then give Freeport *a kickback* of $300.00, and to then retain the balance of the sale proceeds, as Non-Stop's compensation for having towed and stored the vehicle at Freeport's directive.

10.      Annexed collectively as Exhibit C is a sampling of more than two hundred (200) Vehicle Release Authorizations wherein the Freeport Police Department seized all of such vehicles, without warrants, and thereafter authorized "Non-Stop Towing" to release those seized vehicles to "Non-Stop Towing," whereby Freeport authorized Non-Stop to then sell such two hundred vehicles, and to retain the proceeds from such sales.

3

11.    As has been testified, under oath, by the principal of one of Freeport's tow vendors, when Freeport issues one of these latter type Vehicle Release Authorizations, Freeport thereby authorizes the tow company to sell the vehicle, and to retain the proceeds from such sales.

12.    The Plaintiff incorporates by reference herein the sworn deposition testimony of Joseph Calvagno, the principal of All County Hook Up Towing Inc., taken on February 21, 2024, in the matter of Alberto Higgs v. Village of Freeport, U.S.D.C. E.D.N.Y. 23-cv-03943.

13.    At no time were, or are, the owners of any of such seized vehicles afforded any pre-seizure hearing, or any proper post-seizure hearing at which to challenge:

(a)    Freeport's initial warrantless seizure of their respective vehicles;

(b)    Freeport's right to the continual retention of their vehicles as a means of extorting payment from the owner;

(c)    Freeport's right to "release" each vehicle to Non-Stop in the event that a vehicle owner does not pay the sums demanded by Freeport;

(d)    Freeport's right to authorize Non-Stop to sell each vehicle; or

(e)    Non-Stop's right to sell same, and to retain the proceeds of such sale.

### The "*Ring of Steel*"

14.    To effectuate this highly lucrative *seizure-for-profit and kickbacks* scheme, Freeport has installed a ring of fixed License Plate Readers (LPRs), (commonly known as Freeport's "*Ring of Steel*") which have been installed around the Village, and which scan millions of license plates of vehicles entering or exiting in the Village of Freeport.

4

15.     When one of Freeport's LPRs detects any motor vehicle that either: (a) has three or more outstanding/albeit unadjudicated parking summonses, or (b) has an expired or suspended registration, the LPR electronically notifies Freeport Police patrol officers in their patrol cars.

16.     Each of Freeport's patrol officers has been ordered to then: (i) seize each respective vehicle, (ii) force the owner out of the vehicle, and then (iii) summon Non-Stop Towing, to tow and take possession of the vehicle - - leaving the vehicle owner stranded on the side of the road.

17.     The Plaintiff incorporates by reference herein, the sworn deposition testimonies of multiple Freeport police officers in the matters of Alberto Higgs v. Village of Freeport, U.S.D.C. E.D.N.Y. 23-cv-03943, and April Muir v. Village of Freeport, U.S.D.C. E.D.N.Y. 23-cv-03904, and a bodycam video recording of a Freeport Police officer's warrantless seizure of the Plaintiff's vehicle in the Muir case.

18.     Once each warrantless seizure occurs, the owner of each vehicle is extorted to pay substantial sums to both Freeport and Non-Stop to secure the release of their vehicle, under threat that if they fail to pay the sums demanded "within 10 days," the Defendants will sell the seized vehicle.

19.     Freeport derives substantial profits from the seizures carried out pursuant to this scheme by requiring the tow companies it directs to take possession of such seized vehicles to pay Freeport a *kickback* for each tow directed by Freeport.

20.     Non-Stop tenders *a kickback* to Freeport in the amount of $300.00 for each vehicle tow that Non-Stop makes at Freeport's request. Plaintiff incorporates by reference Freeport's contract with Non-Stop Towing, which was originally awarded on May 24, 2021, and the minutes of a Freeport Board of Trustees meeting on October 16, 2023, which notes the agreed-upon kickback that Non-Stop is required to pay Freeport, is $300.00 per tow.

21.     Another tow vendor, which contracted with Freeport, All County Towing and Recovery, tendered Freeport a $451.00 *kickback* each time they towed a seized vehicle at Freeport's directive. Annexed as Exhibit D is an excerpt of All County's contract with Freeport, which provided for same.

22.     *In exchange for the kickbacks*, Freeport authorizes the tow companies to extort excessive towing and storage fees from seized vehicle owners, which are large enough to cover the *kickbacks*, plus to extract a handsome profit - - under threat that if such sums are not paid within 10 days - - Freeport will authorize the tow company to sell the vehicle.

23.     By way of example, in the matter of Island Design v. Village of Freeport, U.S.D.C. E.D.N.Y. 24-cv-1897, after Freeport made a warrantless seizure of that Plaintiff's vehicle under the pretext of a suspended registration, and subsequently directed Non-Stop to tow and store the vehicle, Non-Stop charged the vehicle owner the sum of $1,900.94 for the tow and one (1) day of storage.

24.     Annexed hereto as Exhibit E is a true copy of Non-Stop's paid invoice which reflects that the vehicle owner was forced to pay Non-Stop $1,900.94 to secure the release of their vehicle which had been seized/impounded on 11/2/2023 (at 10:45 am), and released it the next day on 11/3/2023 (at 11:50 am), meaning that Non-Stop only stored it for one day, but charged the owner $1,900.94 notwithstanding.

25.     In a similar vein, Freeport's other vendor, All County Towing, which paid Freeport a $451.00 kickback for every tow it performed at Freeport's directive, charged another vehicle owner whose vehicle was seized by Freeport without a warrant $1,069.00 to secure the release of their respective vehicle. A true copy of that paid invoice is annexed hereto as Exhibit F.

26.     Neither of the vehicle owners was afforded any opportunity or hearing at which to challenge the excessive towing/storage fees demanded by Non-Stop or All County, but were simply threatened to pay them, under the threat that their failure to do so would result in the sale of their vehicles.

27.     Under this highly lucrative warrantless *seizure-for-profit and kickbacks* scheme, Freeport's records reflect that it extorts an average of nine hundred thirty-four thousand ($934,000.00) dollars each year *in kickbacks alone*, all of which are extracted from the owners of the vehicles that Freeport has seized without warrants, without any judicial order, and without any legitimate basis or legal authority to carry out such warrantless seizures.

28.     Annexed hereto collectively as Exhibit G are excerpts from Freeport's 2023 and 2024 Annual Budgets, which reflect the Freeport's projected "revenues" for "*tow fees*" (based upon previous year's revenues) would total nine hundred thirty-four thousand ($934,000.00) dollars annually, for both the 2023 and 2024 calendar years.

29.     The Plaintiff, Paul Whaley, became a victim of Freeport's warrantless *seizure-for-profit and kickbacks* scheme when Freeport Police made a warrantless seizure of his vehicle on March 10, 2025, the vehicle was taken from him by the Defendants in violation of his rights under the 4th, 5th, and 14th Amendments.

30.    The Defendants seized his vehicle from him, without a warrant, under the pretext that he had outstanding, albeit unadjudicated, parking summonses, as a result of which, Freeport had placed his vehicle on its "Scofflaw vehicle list."

31.    The Defendants then refused to release his vehicle, unless and until he paid Freeport $147.25 for *unadjudicated* parking tickets, plus $123.50 for an "Impound Fee," plus an additional $643.00 to Non-stop for towing and storage fees, which the Plaintiff was extorted into paying, to obtain the release of this vehicle. See Exhibit O. Non-Stop had intended to charge the plaintiff $3,568.33 for towing and storage, but the Plaintiff refused to pay same. See Exhibit O.

32.    The United States District Court in the Eastern District of New York has already held that the Defendants' practice of making warrantless seizures of motor vehicles under this scheme violates the 4th Amendment rights of those possessing interests in such vehicles.. See Toyota Lease Trust v. Village of Freeport, 20-cv-2207, Dkt# 62 and Order of Judge Diane Gujarati Dated 3/30/2023.

33.    Plaintiff Paul Whaley brings this action both on behalf of himself, individually, and as a class action, seeking a declaratory judgment, compensatory and punitive damages, costs, and attorneys' fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 et al.

34.    He brings this action on behalf of himself and an estimated 5,000 other vehicle owners whose vehicles have also been seized by Freeport under its *seizure-for-profit extortion/kickback* scheme, (with a listing of 3,370 of such seizures together with Freeport Impound numbers for each ,being annexed hereto as Exhibit H) to obtain redress for the deprivation of their rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

## II.    <u>JURISDICTION AND VENUE</u>

35.    Plaintiff brings this civil rights action pursuant to 42 U.S.C. §1983 and §1988 for deprivation of Plaintiffs' rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and the New York Constitution.

36.    Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court for all suits brought pursuant to 42 U.S.C. § 1983, as well as 28 U.S.C. § 1331, which provides for original jurisdiction in this Court for all causes of action arising under the Constitution and laws of the United States.

37.    The supplemental jurisdiction of the District Court is invoked pursuant to 28 U.S.C. § 1367 for an interrelated state law claim which has arisen from the occurrences giving rise to the Federal claims and which have a common nucleus of operative fact.

38.    Plaintiff seeks declaratory relief, compensatory damages, and punitive damages, pursuant to 28 U.S.C. §§ 2201(a) and 2202 et al.

39.    Plaintiff additionally seeks reasonable attorney's fees as part of the costs authorized to the prevailing party in an action pursuant to 42 U.S.C. §1983, predicated upon 42 U.S.C. §1988, and 42 U.S.C. §2000.

40.    Venue lies in the Court pursuant to 28 U.S.C. §1391, because virtually all of the events described herein occurred in the Village of Freeport, in Nassau County, Long Island, within the Eastern District of New York.

### III.   THE PARTIES

41.    The Plaintiff, Paul Whaley ("Mr. Whaley"), is an individual who resides in Oceanside, New York. Mr. Whaley is the owner of the 2007 Mercedes SL500, which was unlawfully seized and detained by the Defendants for sixty-one (61) days.

42.    The proposed Class Member Plaintiffs are vehicle owners whose vehicles were seized by Freeport, without warrants, under Freeport's warrantless *seizure-for-profit and kickbacks* scheme within a period of three (3) years immediately preceding the filing of the instant Complaint.

43.    Defendant Michael Smith is the Chief of the Freeport Police Department with a principal place of business/employ at 40 N. Ocean Ave, Freeport, New York 11520.

44.    Upon information and belief, Freeport is a municipal corporation organized under the laws of the State of New York, with a principal place of business situated at 40 N. Ocean Avenue, Freeport, New York 11520.

45.    Upon information and belief, Defendant Non-Stop Towing & Recovery ("Non-Stop") is an assumed name for JCB & Sons, Inc., which upon information and belief, is a domestic corporation organized and existing under the laws of the State of New York and operating as a business engaged in the towing and storage of motor vehicles, with a principal place of business located at 99 Maple Place, Freeport, New York 11520.

46.    Upon information and belief, Defendant Jerome Bonomo is an individual residing at 23 Anchor Street, Apt. M, Freeport, New York 11520, and is the principal of Non-Stop. As such, Defendant Bonomo is the person responsible for setting policies and practices of Non-Stop.

47.    Upon information and belief, Defendant Matthew K. Seridge is an employee of the Freeport Police Department, employed as a police sergeant, whose Badge number is #14,

with a principal place of business/employ at 40 N. Ocean Ave, Freeport, New York 11520.

48.    Upon information and belief, Defendant John Doe Jemerson-Oliver is a police officer and employee of the Freeport Police Department, whose badge number is #156, with a principal place of business/employ at 40 N. Ocean Ave, Freeport, New York 11520. Said defendant's actual first name being unknown to the Plaintiff herein, said defendant is being named herein as "John Doe" Jemerson-Oliver, with the "John Doe" being a fictitious first name for the intended defendant joined herein.

## IV.    FREEPORT'S WARRANTLESS SEIZURE-FOR-PROFIT AND KICKBACKS SCHEME

49.    At all times described herein, and at present, the Village of Freeport has been operating a warrantless *seizure-for-profit and kickback*s scheme, which consists of two parts.

50.    They include: (1) the warrantless seizures of vehicles being operated with an expired or suspended registration, (2) the warrantless seizures of "*scofflaw* vehicles," which Freeport defines as vehicles against which there are three or more outstanding (albeit unadjudicated) parking summonses.

51.    Within this scheme, the Defendants have monetized the warrantless seizures of motor vehicles, which are seized for the sole purpose of extracting monies from the owners of such vehicles.

52.    Such vehicle seizures are not being carried out in connection with any arrest. Nor are such vehicles being seized for the purposes of seeking forfeiture, or for use as evidence in any pending criminal proceedings.

53.    Nor are such vehicles being seized for any public safekeeping or caretaking purpose. Nor are such vehicles being seized because of the commission of any moving

violations, any dangerous conditions, or any safety defects in the vehicles themselves.

### A.    Freeport's Warrantless Seizures of Vehicles Being Operated with an Expired or Suspended Registration

54.    As Part 1 of Freeport's warrantless *seizure-for-profit and kickbacks scheme*, Defendants Freeport, Police Chief Michael Smith, Non-Stop and Bonomo have implemented policies, practices and procedures under which Freeport Police patrol officers are required to make warrantless seizures of all motor vehicles found being operated with an expired, suspended or revoked registration, for the sole purpose of extorting millions of dollars from their owners, annually.

55.    Defendants Freeport and Freeport Police Chief Michael Smith have ordered all Freeport Police Patrol officers to make such seizures without warrants, judicial orders, or any exception to the warrant requirement which exists under the 4th Amendment to the United States Constitution.

### (i)    The Defendants' Initial Warrantless Seizures of Vehicles With Expired or Suspended Registrations

56.    Freeport Police Department General Order 21F explicitly mandates that all Members of the Freeport Police Department "**shall** impound... any vehicle being operated while unregistered or with an expired, revoked or suspended registration." See Exhibit I - a copy of Freeport Police Department General Order 21F at subparagraphs A and A(7) [emphasis added].

57.    As a matter of public record, Freeport has installed a "*Ring of Steel*," which is comprised of a ring of fixed License Plate Readers ("LPRs") that have been permanently mounted by Freeport, which scan millions of license plates of vehicles entering and exiting the Village of Freeport. See a recorded interview of Freeport Police by CBS News, which video currently remains in the public domain at: https://www.youtube.com/watch?v=LH0uHiVm4lM.

58. When an LPR identifies a vehicle entering the Village that has an expired or suspended registration, it electronically sends a notification to Freeport Police patrol officers in their patrol cars, who are then required to pull the subject vehicle over and impound it.

59. As reflected within Order 21F, subparagraphs A and A(7), and as has been testified to under oath, by multiple Freeport police officers, Freeport's patrol officers have no discretion, but are required to impound every vehicle, and have no discretion to permit vehicle owners to simply call their own tow truck to have their vehicle towed to their home.

60. Under these policies, practices, and procedures, as directed by Defendant Smith, motor vehicles are seized based solely upon the pretext that their registration is expired, suspended, or revoked.

61. Under Freeport's policies, practices, and procedures, there is no requirement that there be any other basis for the seizure, such as any community caretaking need, any requirement that the respective driver has committed any moving violation, nor the presence of any dangerous condition or any safety defect in the seized vehicle.

62. Under Freeport's actual policies, practices, and procedures, all such seizures are made without warrants, any judicial orders, or any recognized exception to the warrant requirement mandated by the United States Constitution and the Amendments thereto.

63. Upon information and belief, in many cases, vehicle owners are entirely unaware that their registration has expired, been suspended or revoked, and have not received any notice of same prior to their vehicle being impounded by Freeport. See e.g., Muir v. Village of Freeport, U.S.D.C. E.D.N.Y 23-cv-03904.

64. Upon information and belief, in an unknown number of cases, the registrations for such vehicles have been suspended, due solely to an error on the part of the New York State

Department of Motor Vehicles ("DMV"). See e.g., Davila v. Village of Freeport, U.S.D.C. E.D.N.Y. 23-cv-06523.

65.    At the time of each seizure, Freeport Police contact Non-Stop to come to the scene of the seizure, to take possession of the vehicle, and to tow it to Non-Stop's storage facility.

66.    At no time are the owners of such vehicles afforded with any pre-seizure notice that their vehicle may be seized.

67.    Nor are they ever afforded any hearing, whatsoever, before or after their vehicles are seized, at which they are afforded any opportunity to challenge Freeport's right to seize their vehicle without a warrant or any exception to the warrant requirement, or Freeport's right to retain continuing possession of same, unless and until the owner pays whatever sums may be demanded of them by Freeport and/or Non-Stop.

68.    Nor are vehicle owners afforded any hearing at which to challenge Freeport's practice of authorizing Non-Stop to sell their vehicles, and to retain the proceeds of such sales, as Non-Stop's compensation for having towed and stored the vehicle at Freeport's request.

> (ii)    The Defendants' Continuing Retention of Seized
>          Vehicles With Expired or Suspended Registrations

69.    Once a vehicle is seized under the pretext that its registration had expired or was suspended, the Defendants refuse to release the vehicle to its owner unless:

> (a)    the owner pays Freeport a fine for having operated their vehicle with an
>          expired or suspended registration;
>
> (b)    the owner *additionally pays* any and all sums which are alleged to be due
>          to any other municipality for any alleged outstanding summonses, any
>          alleged unpaid, albeit unadjudicated tolls, any alleged unpaid Highway
>          Use Taxes (HUT), or any other claim of payment due by any other

14

jurisdiction which caused the vehicle owner's registration to be
suspended;

(c)     the owner causes the New York State DMV to reverse any registration
suspension or revocation;

(d)     DMV updates their records to show that the vehicle's registration is then
valid and current, and

(e)     the vehicle owner pays Non-Stop whatever amounts it unilaterally
demands they pay Non-Stop for towing and storage.

70.     Both Freeport and Non-Stop refuse to release these seized vehicles unless and
until all such sums are paid in full.

71.     At no time are vehicle owners afforded any hearing, whatsoever, or any
opportunity to challenge all the amounts which the Defendants demand they pay, or the
Defendant's rights to deprive such owners of their vehicles on a continuing basis, unless and
until they pay the amounts which the Defendants have unilaterally demanded be paid.

(iii)     The Extortion Component of the Scheme

72.     Once one of Freeport's tow vendors (including Non-Stop) tows a seized vehicle at
Freeport's directive, they will charge vehicle owners as much as $1,000 to more than $3,500.00
dollars for "towing and storage," - - to ensure that they extract sufficient sums from each vehicle
owner for them to pay Freeport its *kickback* of $300.00 to $451.00 per tow - - while still securing
a handsome profit.

73.     Annexed as Exhibits E, F and N are towing and storage bills from two of
Freeport's tow vendors (one of which is Non-Stop) which had towed and stored seized vehicles
at Freeport's directive, for which they extracted the respective sums of $1900.00, $1,069.96, and
$643.00 from the respective vehicle owners, before they would release their respective vehicles
to them.

74.    To extort such excessive sums from vehicle owners, Freeport threatens such vehicle owners that if they do not "reclaim their vehicle" (i.e., pay the sums unilaterally demanded) "within 10 days," "Freeport will acquire title" and will "destroy" their vehicle. See Exhibit A, - which are true copies of the standard notice mailed to vehicle owners by the Freeport Police Department, after the police seized an owner's vehicle, without a warrant.

75.    If a vehicle owner succumbs to Freeport's unilateral demand for payment, by tendering whatever sums Freeport demands within 10 days, Freeport issues a "Vehicle Release Authorization" wherein Freeport "authorizes" the tow vendors to release the vehicle to its owner. See Exhibit B.

76.    If, however, vehicle owners fail to pay the sums Freeport has demanded within ten days of Freeport having mailed them a 10-day notice, Freeport then makes good on its threat to dispose of the owner's vehicle, by issuing a "Vehicle Release Authorization" to Non-Stop, wherein Freeport explicitly authorizes Non-Stop to release the vehicle to "Non-Stop." See Exhibit C.

77.    In authorizing Non-Stop to release the vehicle to *itself*, Freeport authorizes Non-Stop to sell the respective vehicle and to retain the sales proceeds as its compensation for having towed and stored the vehicle, so Freeport does not have to pay Non-Stop for same.

78.    At no time prior to issuing Vehicle Release Authorizations whereby Freeport authorizes Non-Stop to sell each seized vehicle, does Freeport obtain an order from any court empowering Freeport to "release" the owner's vehicle to the tow company, or empowering Freeport to authorize the tow company to sell the owners' vehicles.

79.    At no time does Freeport or the other Defendants afford such vehicle owners with any hearing at which to challenge: (a) Freeport's right to "release" their vehicle to Non-Stop, or

16

(b) Freeport's right to authorize Non-Stop to sell the vehicle and to retain the proceeds from such sale.

**(B)    The Defendants' Warrantless Seizures of "Scofflaw Vehicles" Which Have Three or More Outstanding, *Albeit Unadjudicated,* Parking Summonses**

80.    The second part of Freeport's warrantless *seizure-for-profit and kickbacks* scheme implemented by the Defendants consists of making warrantless seizures of "*Scofflaw vehicles,*" which Freeport defines as vehicles that have three or more outstanding, *albeit unadjudicated,* parking summonses. (See Exhibit J).

81.    Under Defendant Smith's explicit directive, Freeport has implemented warrantless seizures as a *non-judicial* means of *self-help*, for the sole purpose of collecting monies Freeport claims are owed for outstanding, albeit unadjudicated, parking summonses, and to additionally receive a *kickback* for each seizure from the tow company, which Freeport police direct to tow each vehicle.

82.    Under this practice the Defendants: (i) make warrantless seizures of "scofflaw vehicles," (ii) then retain continuing possession of same as a means of coercing their owners to pay the sums which Freeport claims it is owed and (iii) then sell the vehicles if the sums are not paid within 10 days of Freeport having made demand for payment of same.

83.    To implement such policies, practices, and procedures, Defendant Michael Smith affirmatively instructed all members of the Freeport Police Department to seize all "Scofflaw Vehicles," which he defined as all vehicles that had "3 or more outstanding parking summonses."

84.    Annexed hereto as Exhibit J is an e-mail that defendant Smith sent to "all sworn personnel" within the Freeport Police Department wherein he directed same.

(i)    Initial Warrantless Seizures of *Scofflaw Vehicles*

85.    In addition to locating vehicles that are being operated with an expired or suspended registration, Freeport's *Ring of Steel* contemporaneously identifies vehicles entering or exiting the Village of Freeport, which have "3 or more outstanding parking summonses."

86.    When its scanners pick up the plate of a vehicle which has three or more outstanding parking summonses, they electronically notify Freeport patrol officers, in their patrol cars, in real time, that a specific Scofflaw vehicle has entered the Village.

87.    As they have been directed by Defendant Smith, the patrol officers then wait for the vehicle to be parked, and seize it without a warrant, any judicial order, or any exception to the warrant requirement.

88.    Alternatively, if the amount that Freeport claims to be due for outstanding parking summonses reaches a pre-determined amount, Freeport does not wait for its fixed LPRs to find the vehicle.

89.    *Instead*, Freeport police officers will just go to the vehicle owner's home and seize their vehicle without a warrant or any exception to the warrant requirement, as was the case in Higgs v. Village of Freeport, which is currently pending in the U.S.D.C. E.D.N.Y. 23-cv-03943.

(ii)    Continued Retention of "Scofflaw Vehicles"

90.    When Freeport police seize a "scofflaw vehicle" solely because there are three or more outstanding parking summonses against the vehicle, Freeport thereafter refuses to release such vehicle, and deprives the owners of their vehicles on a continuing basis, unless and until the owners then pay whatever amounts Freeport unilaterally demands they pay, and then additionally pay whatever sums the tow company demands.

18

91.     Similar to the other cases in Freeport's *seizure-for-profit and kickbacks* scheme, Freeport demands such payments be made, under threat that if such sums are not paid within 10 days, Freeport will "destroy" (i.e., sell) their vehicles.

92.     At no time prior to making such warrantless seizures of such vehicles does Freeport (a) obtain or enter any judgments upon such outstanding parking summonses, (b) obtain a writ or writ of execution authorizing any Sheriff, police officer or anyone else to seize such vehicles to satisfy any such judgments, nor (c) obtain any judicial order, of any type, authorizing Freeport to seize such vehicles.

93.     In sum, Freeport simply seizes such vehicles without a warrant or any exception to the warrant requirement mandated under the United States Constitution, as a means of non-judicial self-help, to force vehicle owners to pay sums which Freeport unilaterally claims it is owed for non-adjudicated parking summonses.


(iii)    The Extortion Component of the Scheme

94.     This part of Freeport's warrantless *seizure-for-profit and kickbacks* scheme has precisely the same extortion component as the expired registration/insurance cases.

95.     Once Freeport police make a warrantless seizure of a vehicle for having three or more outstanding parking summonses, either by going to the owner's home and seizing their vehicle from their home, or finding them through the operation of its *Ring of Steel*, Freeport demands that all sums it deems due be paid within 10 days, in the absence of which their vehicle will be "destroyed" (meaning sold).


(iv)    Sham Retention Hearings for Scofflaw Seizures

96.     Upon learning that other jurisdictions were being sued for making warrantless

seizures of motor vehicles without affording the owners of such vehicles with hearings, in May of 2023, Freeport created a sham *post-seizure* hearing process for *scofflaw* vehicles, which Freeport is seizing without warrants.

97.     Freeport did so on or about May 2023, by enacting Section 1, Chapter 155, Article XIV §155-107 of the Freeport Village Code, a copy of which is annexed hereto as Exhibit K.

98.     As is addressed within Count II hereinbelow, Section §155-107, is *per se* Unconstitutional as written, and the post-seizure hearings and procedures which Freeport purports to offer the owners of seized vehicles violate virtually every clearly-established due process requirement and constraint articulated by the United States Court of Appeals for the Second Circuit, and the United States District Courts within the Circuit, within the past 25 years.

## V.    FREEPORT'S UNCONSTITUTIONAL SCHEME IS APPLIED AGAINST PLAINTIFF PAUL WHALEY

99.     At all times described herein, Plaintiff Paul Whaley was, and remains, the owner of a 2007 Mercedes SL500 ("The Subject Vehicle").

100.    Sometime prior to October 21, 2024, the front license plate holder on his vehicle broke, such that it was no longer capable of holding his front license plate to his front bumper.

101.    Under the circumstances, Mr. Whaley placed his front license plate for this vehicle on his dashboard, in such a manner that it was clearly visible through his front windshield.

102.    His vehicle's rear license plate remained affixed to his rear bumper.

103.    He then brought his vehicle to a repair shop for repairs, leaving the vehicle lawfully parked in the driveway of the repair shop, which was located on Buffalo Avenue in

Freeport.

104.    Thereafter, unbeknownst to the Plaintiff, the owner of the repair shop, or his employees, parked the vehicle in front of the repair shop on two (2) occasions, and on both occasions, Freeport police issued two parking violations against the Subject Vehicle.

105.    On October 21, 2024, Freeport police issued parking violations # F-3050884 (no front plate) and # F-3050883 (No parking 9 am to 11 am on Mondays).

106.    On October 28, 2024, Freeport police issued parking violations # F-3051058 (no front plate) and # F-3051057 (No parking 9 am to 11 am on Mondays).

107.    At the time such parking violations had been issued against his vehicle, Plaintiff was entirely unaware of same, because this vehicle was in the custody of the repair shop, and Plaintiff had no way of knowing that it had been parked on the street.

108.    On March 10, 2025, a police officer came to the Plaintiff's place of employ and advised the Plaintiff that his vehicle was being impounded as a scofflaw.

109.    The Plaintiff objected to the seizure of his vehicle to Defendant Jemerson-Oliver, and asked to speak to a supervisor from the Freeport Police Department.

110.    A Sergeant (Defendant Matthew K. Seridge ), then came to the scene, and both Defendants Seridge and Jemerson-Oliver advised the Plaintiff that: (a) his vehicle was being impounded as a scofflaw, and (b) the only way to prevent his vehicle from being impounded right then and there, would be if the Plaintiff immediately went to the Freeport Village court and paid the four outstanding parking tickets, at that moment.

111.    The Plaintiff refused to leave work to pay the tickets, and he didn't have $560.00 *in cash* to pay those tickets at that moment (as Freeport only accepts payment for past-due tickets via cash).

112.    So, Defendants Seridge and Jemerson-Oliver proceeded to seize the vehicle and called Non-Stop to take the Plaintiff's vehicle because it was on Freeport's "Scofflaw list."

113.    In doing so, Defendants Seridge and Jemerson-Oliver completed a Freeport Police Department Motor Vehicle Impound Worksheet, wherein they affirmatively recorded that the "REASON FOR IMPOUND" of the Plaintiff's vehicle was that it was on Freeport's "Scofflaw list" which had last been updated by Freeport on "3/7/25" and was "# 234" on that list. See a true copy of the completed Impound worksheet pertaining to their seizure of the Plaintiff's vehicle, made part of this Complaint as Exhibit L.

114.    In making this seizure, these Defendants acted as Defendant Police Chief Smith directed them, and consistent with Defendant Smith's directive that all vehicles on such scofflaw list are to be seized (See Exhibit "J").

## VI.    EACH OF THE DEFENDANTS IS A "PERSON" WHO ACTED UNDER COLOR OF STATE LAW

### A.    The Village of Freeport and Police Chief Michael Smith

115.    While intentionally carrying out and directing this warrantless *seizure-for-profit and kickbacks scheme*, Freeport Police Chief/Defendant Michael Smith was a person acting under state law, exercising his power possessed by virtue of state law and made possible only because both he, the Village of Freeport, and the other police officer Defendants herein were each clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988) quoting (United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043 (1941).

116.    The Village of Freeport is a person liable to the Plaintiff under 42 U.S.C. §1983 because the Defendants' actions were undertaken pursuant to customs, policies, and practices of the Village, and because in setting, carrying out, and affirmatively directing the enforcement of

22

such policies, Defendant Michael Smith acted as the final decision-maker for the Village.

117.    At all times described herein, Freeport was clothed with the authority to make official government policies and laws on its behalf, and the wrongful actions of the Defendants herein, with respect to the Vehicles described herein, represent Freeport's official governmental policies, practices, and procedures.

118.    Defendant Michael Smith cannot avail himself of qualified immunity for his actions in directing all police officers and/or all sworn members of the Freeport Police Department, all of whom were acting under his control and supervision, to make warrantless seizures of vehicles based upon nothing other than the fact that they have three or more outstanding parking summonses.

119.    Defendant Smith could not have reasonably believed that the carrying out of his directive would not violate the Constitutional rights of vehicle owners under the 4th Amendment to the United States Constitution.

### B.    Defendants Non-Stop Towing and Jerome Bonomo

120.    Defendants Non-Stop Towing and Bonomo are also persons acting under color of state law because there is a sufficiently close nexus between the Village of Freeport and the challenged actions of Non-Stop Towing, so that the actions of Non-Stop Towing may fairly be treated as those of Freeport.

121.    Non-Stop towed the Plaintiff's vehicle and those of the Class Members, stored them, deprived the Plaintiffs of their vehicles on a continuing basis, extorted monies for such towing and storage despite the fact that the owners of such vehicles did not request any such services, and, in many cases, sold the vehicles under color of authority granted to Non-Stop and Bonomo by the Freeport Police Department.

122.    In carrying out these activities, both Non-Stop and Bonomo acted pursuant to the coercive police power of the Freeport Police Department, and were controlled by same

123.    Both Non-Stop and Bonomo were willful participants in these joint activities with the Freeport Police Department, their functions were entwined with Freeport's seizure and vehicle retention policies, and Non-Stop and Bonomo were delegated public functions by the Freeport Police Department in physically seizing, taking possession of, and disposing of, the vehicles of the Plaintiff and those of the Plaintiff Class Members.

124.    As the principal of Defendant Non-Stop, Defendant Bonomo set the policies, practices, and procedures of Defendant Non-Stop, personally signed the agreement with Freeport to have Non-Stop carry out the unconstitutional policies, practices, and procedures jointly with Freeport, and directed and/or caused Non-Stop and its employees to carry out such unconstitutional policies, practices, and procedures.

C.    **Defendants Matthew K. Seridge and John Doe Jemerson-Oliver**

125.    Defendants Seridge and Jemerson-Oliver were acting under color of state law at the time they made a warrantless seizure of the Plaintiff's vehicle, because they effectuated such seizure and directed Defendant Non-Stop to take possession of the Plaintiff's vehicle, while they were respectively clothed with their authority as a police sergeant and police officer employed by the Freeport Police Department.

126.    Neither of such Defendants may avail themselves of qualified immunity for their actions, as no reasonable police officer, or reasonable police sergeant, could have reasonably believed that they were not violating the Plaintiff's rights by seizing the Plaintiff's vehicle without a warrant, a writ or writ of execution, any judicial order, or any other recognized exception to the warrant requirement.

## VII.    CLASS ALLEGATIONS

127.    Plaintiff brings this action on behalf of himself and those similarly situated. As detailed in this Complaint, Defendants regularly and routinely seize and attach liens to vehicles under Freeport's scofflaw *seizure-for-profit and kickbacks* program, which is unconstitutional.

128.    The Defendants are carrying out this policy over the entire geographic area of the Village of Freeport, impacting thousands of vehicles for which persons were deprived of their property rights in seized vehicles with no notice, no due process, and no compensation.

129.    Accordingly, this action is ideally situated for class-wide resolution, including injunction and/or declaratory relief.

130.    The Class is defined as all persons with interests in vehicles that were seized by Freeport without a warrant, under its scofflaw *seizure-for-profit and kickbacks* program, which includes those vehicles seized under both parts of the program described herein above.

131.    The Class is properly brought and should be maintained as a class action under Federal Rule 23 (b), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

(a)    Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff is aware that there are thousands of instances where persons have been deprived of their rights by the implementation of Freeport's scofflaw seizure kickback program, more than 3,000 of whom have been identified by the Plaintiff in the list annexed to and made part of this Complaint as Exhibit H.

(b)    Commonality: The questions of law and fact common to the Class Members which predominate over any questions that may affect individual Class Members include, but are not limited to: Whether Defendants are responsible for violation of constitutional

rights via Freeport's scofflaw seizure kickback program; Whether Plaintiffs and the Class Plaintiffs are entitled to damages; Whether Plaintiffs and the Class Plaintiffs are entitled to money damages under and causes of action delineated below as to other Class Members.

(c)    Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same injury when Defendants enforced their scofflaw seizure kickback program. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

(d)    Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent; his 42 U.S.C. 1983 claims are common to all members of the Class and he has a strong interest in vindicating their rights. He has retained counsel competent and experienced in Section 1983 claims based upon deprivation of rights in seized vehicles and class action litigation and he intends to prosecute this action vigorously. Plaintiff has no interests that conflict with those of the Class. Plaintiff and his counsel will fairly and adequately protect the Class Members' interests. Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications. The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. Common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' concerted action in enforcing Freeport's scofflaw seizure kickback program.

(e)    Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

(i)    The joinder of numerous individual Class Members with thousands of claims is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

(ii)    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive-if not totally impossible-to justify individual actions;

(iii)    When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Class and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

(iv)    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

(v)    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. This class action will assure uniformity of decisions among Class Members;

(vi)    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation;

(vii)    Class Members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by a single class action; and

(viii)    It would be desirable to concentrate in this single venue the

litigation of all Plaintiffs who were deprived of their rights by Freeport's scofflaw seizure kickback program.

133.    Accordingly, this Class is properly brought and should be maintained as a class action under Fed. Rule Civ. Pro. 23 (b) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## COUNT ONE

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### Deprivation of Property by Unreasonable Seizure
### 4th Amendment Violation
### On behalf of Plaintiff Paul Whaley Individually

132.    Plaintiff realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein..

133.    Plaintiff, Paul Whaley, asserts this Count on behalf of himself, for the Defendants having violated his U.S. Constitutional right against unreasonable seizures, as is afforded protection under the 4th Amendment to the United States Constitution.

134.    At all times described herein, Plaintiff Paul Whaley was, and remains, the owner of the 2007 Mercedes SL500 described herein above (The Subject Vehicle). At all times described herein, Plaintiff Whaley possessed, and continues to possess, protected property rights to (a) own, (b) use, and (c) possess The Subject Vehicle.

135.    On March 10, 2025, the Defendants seized The Subject Vehicle, towed it, detained it, and affixed *non-judicial de facto* liens upon it, without a warrant or any exception to the warrant requirement.

136.    Alternatively, to the extent the initial seizures were accompanied by any arguably

28

legitimate exception to the warrant requirement, they were carried out in an unreasonable manner of execution insofar as the detention of The Subject Vehicle and the encumbering of same with a lien, exceeded the scope necessary to complete any legitimate task associated with the purported warrant exception for which the vehicle was seized.

137.    The sole reason for such warrantless seizure was that his vehicle was on Freeport's "Scofflaw list" for having three or more outstanding parking summonses. See Exhibits L and N, each of which recorded that the reason for impound was because the Village of Freeport had deemed the vehicle a "scofflaw."

138.    Defendants' seizure of The Subject Vehicle was therefore unreasonable in violation of the 4th Amendment to the United States Constitution.

139.    Defendants' unreasonable seizure of The Subject Vehicle was carried out by the Defendants under color of state law, and was accomplished in accordance with the Defendants' standard policies, practices, and customs under Freeport's scofflaw *seizure-for-profit and kickbacks* program.

140.    Each of the named Defendants played an active role in such seizure, as;

    (a)    Freeport and its Police Chief, Defendant Michael Smith, had prepared the Scofflaw list, and affirmatively directed all Freeport Police Officers to make warrantless seizures of all vehicles on that list;

    (b)    Employees of the Freeport Police Department, Defendants Matthew K. Seridge and "John Doe" Jemerson-Oliver, actually seized The Subject Vehicle;

    (c)    Defendant Non-Stop took possession of The Subject Vehicle, thereafter depriving the Plaintiff of it on a continuing basis, and extorted payment from the Plaintiff for towing and storage services that were not provided at Plaintiff's request; and

29

(d)    Non-Stop's actions were carried out under the supervision and direction of its principal, Jerome Bonomo.

141.    As a result of such unreasonable seizure, the Plaintiff was damaged by having been deprived of the use and possession of his vehicle, and by having been extorted to pay the Defendants more than nine hundred ($900) dollars to secure its release. See Exhibit N.

142.    The actions of the individual Defendants were particularly egregious, because they seized The Subject Vehicle for the sole purpose of extorting monies from the Plaintiff in a manner that would have constituted a criminal offense, if it weren't for the fact that the Defendants seized same under the pretext of Freeport's police authority, and the individual Defendants purported to act as agents of Freeport.

143.    Under New York State law, the Village of Freeport is utterly void of legal authority to make warrantless seizures of motor vehicles for the purpose of collecting sums which Freeport may claim to be due to it for outstanding unadjudicated parking summonses.

144.    The State of New York has codified a procedure through which a municipality may pursue possession of personal property to recover fines for tickets. The state has also vested a specific official with the legal authority to make a warrantless seizure of personal property to recover same.

145.    Under such clearly-established New York statutory procedure, if a municipality wishes to pursue possession of personal property because it is owed monies for unpaid tickets:

(a)    the municipality must first serve notice, by certified mail, upon a vehicle owner explicitly notifying the vehicle owner that the municipality intends to enter a civil judgment upon the unpaid tickets pursuant to VTL §1806-a;

(b)    the municipality must then enter a judgment in a civil Court pursuant to

CPLR Rule 5016;

(c)    the municipality <u>must then</u> secure a Writ of Execution for enforcement of the judgment against personal property pursuant to CPLR §5230(a);

(d)    the Writ <u>must then</u> be delivered to a Sheriff, pursuant to CPLR §5230(b) and;

(e)    the Sheriff must then execute the Writ by seizing the specific personal property identified in the Writ for the benefit of the Judgment Creditor to satisfy the outstanding Judgment.

146.    Instead of following that lawful statutory procedure, which would have afforded the Plaintiff ample due process, Defendant Freeport, and its Police Chief, Defendant Michael Smith, arbitrarily decided that they could simply direct all of their patrol officers to seize motor vehicles, without warrants or any exception to the warrant requirement, simply because the Village of Freeport claims that it is owed monies from the owners of such vehicles for outstanding parking summonses that have not yet been adjudicated.

147.    Even worse, they decided that they can extract exorbitant monies for towing and storage sums, in amounts sufficient to enable them to require their towing vendors to tender to Freeport nearly one million ($1,000,000.00) dollars annually, *in kickbacks*, as part of a seizures-for-profit extortion scheme.

148.    As a result of the foregoing, Plaintiff Paul Whaley has sustained compensable damages, and is entitled to obtain redress pursuant to 42 U.S.C. §1983, and to an award for compensatory damages, punitive damages, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988.

149.    The Plaintiff is entitled to a monetary award for compensatory damages, and a

31

money judgment for same, against all of the Defendants, jointly and severally.

150.    The Plaintiff is entitled to a monetary award for punitive damages, and a money judgment for same, against the Defendants Michael Smith, Jerome Bonomo, Matthew K. Seridge, and "John Doe" Jemerson-Oliver, jointly and severally.

151.    The Plaintiff is entitled to a monetary award for reasonable attorney's fees and costs, and a money judgment for same, against all of the Defendants, jointly and severally.


### COUNT TWO

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**
**Deprivation of Property by Unreasonable Seizure**
**4th Amendment Violation**

**On Behalf of All Class Members**

152.    Plaintiff realleges and incorporates by reference the allegations set forth in the prior paragraphs herein.

153.    As described herein above, under the two parts of Freeport's warrantless vehicle *seizure-for-profit and kickbacks* scheme, the Defendants have seized, detained, imposed *non-judicial de facto* liens upon, and sold motor vehicles without warrants, any judicial orders, and exception to the warrant requirement imposed by the United States Constitution and the 4th Amendment thereto.

154.    Plaintiff Paul Whaley brings this action on behalf of all owners of vehicles that were seized by these same Defendants under such scheme for the period of three (3) years immediately preceding the commencement of this action, those constituting the proposed "Class Members."

155.    Upon information and belief, the total number of Class Members is approximately five thousand (5,000), 3,370 of which are specifically identified on the list made part of this

Complaint as Exhibit H hereto.

156.    Each of the Class Member Plaintiffs have suffered damages as a result of these same Defendants having made warrantless seizures of their respective vehicles, as a result of which the Class Members suffered: (a) the loss of the use and possession of their vehicles for varying periods of time; (b) the permanent loss of their vehicles, in those cases within which Freeport authorized Non-Stop to sell their vehicles, and Non-Stop did so; (c) the loss of monies which the Defendants extorted from them under threats that the Defendants would sell their vehicles.

157.    Each of the Class Members suffered the same unreasonable seizures and 4th Amendment violations at the hands of the same Defendants herein.

158.    Each of the Class Members suffered damages and is entitled to obtain redress under 42 U.S.C. §1983 et al, and to obtain compensatory damages, and a money judgment to compensate them for:

(a)    the loss of the value of the use and possession of their vehicles during the periods in which they were deprived of such use and possession by the Defendants;

(b)    the excessive sums they were extorted to pay to the Defendants under the threat that the failure to pay same would result in the permanent loss of their vehicle; and

(c)    the fair market value of their vehicles in those cases where Defendants have permanently deprived them of their vehicles by having sold them and/or disposed of them in some other fashion.

159.    The Plaintiff and Plaintiff Class Members are therefore entitled to relief under 42 U.S.C. §1983.

160.    As a result of the foregoing, the Plaintiff and Class Members are entitled to obtain a money judgment against Defendants, jointly and severally, for actual damages, consequential

damages, punitive damages (Smith, Non-Stop and Bonomo), statutory damages, fees, and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and such other and further relief as the Court deems just and proper.

**COUNT THREE**

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**
**Deprivation of Property Without Due Process of Law**
**Procedural Due Process - 5th and 14th Amendments**

**On behalf of Plaintiff Paul Whaley, Individually**

161.    Plaintiff realleges and incorporates by reference the allegations set forth in the prior paragraphs herein.

162.    After the Defendants unlawfully seized the Plaintiffs vehicle (The Subject Vehicle), they thereafter deprived the Plaintiff of his vehicle on a continuing basis, thereby depriving the Plaintiff of his clearly-established property rights to both use, and possess his vehicle, without having afforded the Plaintiff due process, thereby violating the Plaintiff's rights protected under the 5th and 14th Amendments to the United States Constitution.

163.    The Defendants did not afford the Plaintiff with any pre-seizure notice or any pre-seizure hearing, whatsoever.

164.    The Defendants purported to afford the Plaintiff a post-seizure hearing, but such hearing, and the Village Code provision under which it was conducted, deprived the Plaintiff of his U.S. Constitutional rights to due process.

165.    The post-seizure hearings and procedures that Freeport offers to the owners of vehicles that have been seized for outstanding parking summonses violate virtually every clearly established due process requirement laid bare by the United States Court of Appeals for the Second Circuit and the United States District Courts within the Circuit within the past 25 years.

166.    First, Freeport Village Code Section §155-107, which enables the owners of seized vehicles to request a post-seizure hearing, is unconstitutional on its face because it violates the unconstitutional condition doctrine.

167.    Section §155-107 explicitly provides that when Freeport has seized a vehicle without a warrant for outstanding parking summonses, that vehicle is not permitted to be released to its owner, unless the owner first provides a general release to Freeport, forever waiving their right to sue the Village for having violated their constitutional rights by having towed/seized their vehicle without a warrant.

168.    This patently unconstitutional requirement is set forth within §155-107(G), which provides as follows:

"G.    Proof of Right of Titled Owner or Lienholder to retake possession.

A vehicle will not be turned over to a titled owner . . . unless (they) provide satisfactory proof of the right of a titled owner to take possession of the vehicle in the form of an Affidavit of Right [] stating . . .

(1)    The reason(s) the titled owner [] has the current right to take possession of the vehicle . . .;

(3)    **An agreement to release the Village for its conduct in towing the vehicle**." [emphasis added]

See Exhibit K - Freeport Village Code Section §155-107.

169.    Under the unconstitutional condition doctrine, a governmental entity cannot require one to waive a constitutional right as a condition precedent to receive the benefit of another constitutionally-protected interest to which they are entitled.

170.    Freeport's written procedure violates this doctrine, because it explicitly mandates

that for vehicle owners to regain their U.S. Constitutionally-protected property right to use and possess their own vehicles, they must first waive *their other* constitutionally-protected right, to petition for the redress of grievances (under the 1st Amendment), to sue the Village of Freeport, for having violated their rights in having seized their vehicle without a warrant in the first instance.

171.   This mandatory pre-condition, which requires vehicle owners to provide the Village of Freeport a general release, as a condition precedent to the release of their vehicle back to them, is a *per se* and clearly-established violation of the vehicle owner's right to due process See Fasciana v. County of Suffolk, 996 F.Supp2d 174 (2014).

172.   Second, under Freeport's policies, practices, and procedures, Freeport only affords post-seizure hearings to vehicle owners *who affirmatively request them*, and Freeport deems their right to a hearing "*waived*" if they do not request such a hearing within 21 days of having received notice that such a hearing is available to them. See Exhibit O.

173.   This violates the constraints of due process, under which Freeport is required to afford hearings to all vehicle owners, irrespective of whether they request them or not. See County of Nassau v. Canavan, 1 N.Y.3d 134 (2003).

174.   Third, under Freeport's policies, practices, and procedures, at its post-seizure hearings, Freeport's hearing officer makes findings that: (a) a warrantless seizure of a motor vehicle was lawful, and/or (b) that Freeport may retain continuing possession of same, based upon attorney argument *alone*.

175.   Alternatively stated, Freeport's hearing officer makes findings that a warrantless seizure was lawful, and that Freeport may retain continuing possession of a seizure vehicle, without requiring Freeport to introduce any actual evidence or testimony from any witness who possesses personal knowledge of facts to which they testify.

176.    This is a *per se* violation of the vehicle owner's right to due process. See Boyle v. County of Suffolk, E.D.N.Y. 2010 WL 4340627.

177.    Fourth, at such hearings, the Village of Freeport's only Hearing Officer, Robert Bogle, purports to apply an entirely baseless standard for determining the legality of the warrantless seizure, which has no legal basis, and which is based upon facts that have nothing to do with the basis for the warrantless seizures.

178.    The Plaintiff incorporates by reference herein, a video recording of a retention hearing, provided by Freeport to the Plaintiff, over which Hearing Office Robert Bogle presided on April 10, 2025.

179.    Specifically, while each hearing specifically pertains to the warrantless seizure of a motor vehicle which has been seized because of unpaid parking summonses, the "standard" applied by the hearing officer is that the warrantless seizure was "legally valid" if: (a) a parking ticket had been issued against the seized vehicle for either a missing license plate, an expired registration or a suspended registration, and (b) any such ticket was "properly issued."

180.    If a Village attorney simply argues those two things, and does nothing more, the Village's Hearing Officer rules that the Village has thereby established its *"prima facie case"* that the vehicle *"was abandoned"* under *"New York Law."*

181.    Concomitantly, Freeport's hearing officer rules that Freeport's warrantless seizure of each subject vehicle without a warrant was proper, and that the Village can retain continuing possession of each vehicle, unless and until its owner pays towing and storage fees to Non-Stop, (from which Non-Stop will then pay the Village its $300.00 kickback).

182.    This "standard" was initially applied by the Village's only hearing officer, Robert Bogle, in a sham retention hearing afforded to the Plaintiff Paul Whaley herein, as reflected with

an excerpt of the transcript of same, as follows:

| | |
|---|---|
| Village Hearing Officer<br>ROBERT BOGLE: | Okay, and Mr. Campanelli, did you explain what the purpose of this procedure is here to your client? |
| Whaley-Attorney<br>Campanelli: | No, in fact, I have some, actually, I have some questions because to attempt to prepare to properly represent my client, I looked up the procedure in the village code, specifically article XIV 155 -107, which is entitled procedure, but it doesn't in fact actually contain a procedure for retention hearing. So, I would like to ask of you, I'm not really sure, number one, what the standard is to establish entitlement for the village to retain continuing possession of my client's vehicle, who has the burden of proof and what that burden is, whether it's by clear and convincing evidence or a preponderance of the evidence, or something else.<br>So, I couldn't explain to him what the procedure is because I don't know myself. I read the code, but it doesn't actually have a procedure. So, if you can enlighten me, because this is the first one I've done in Freeport. |
| ROBERT BOGLE: | Yeah, so essentially it follows a similar procedure as a Krimstock hearing. The burden is on the people, the Village of Freeport. They have to establish that the tow was done legitimately. Now the indicia of as to why it would be permissible or a vehicle to be towed is if the tickets that were issued indicating that the vehicle was abandoned and that could be a missing plate, expired registration, suspended registration, any one of those indicia's, as long as those tickets were properly issued, then the town, the village in this case has the ability to tow the vehicle as it's deemed abandoned pursuant to New York law. So that's, it is still their burden, which is why I asked Mr. McLaughlin to go through the violations that were issued on the vehicle, which makes the prima facie case for the village that the vehicle would be designated as abandoned. |
| CAMPANELLI: | Thank you. |

183.    Once Plaintiff's counsel pointed out that the vehicle could not be deemed abandoned, since the vehicle was taken from the Plaintiff, who was present at the time of its seizure, and had objected to same, the hearing officer "changed his theory" and issued a written decision wherein he ruled that the warrantless seizure was "lawful," because the vehicle was:

"seized on a public roadway when a legal search revealed that [the Plaintiff]
failed to respond to the outstanding, and properly issued, [parking] violations"

See Exhibit M

184.    This "standard," which was applied to the Plaintiff's hearing by the Village's only

hearing officer, has no basis in law and constitutes a *per se* violation of the Plaintiff's right to

due process.

185.    As a result of the foregoing, Plaintiff Paul Whaley is entitled to obtain redress

pursuant to 42 U.S.C. §1983 and to an award for compensatory damages, punitive damages, and

reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988.

186.    The Plaintiff is entitled to a monetary award for compensatory damages, and a

money judgment for same, against all of the Defendants, jointly and severally.

187.    The Plaintiff is entitled to a monetary award for punitive damages, and a money

judgment for same, against the Defendants Michael Smith, Jerome Bonomo, Matthew K.

Seridge, and "John Doe" Jemerson-Oliver, jointly and severally.

188.    The Plaintiff is entitled to a monetary award for reasonable attorneys' fees and

costs, and a money judgment for same, against all of the Defendants, jointly and severally.


## COUNT FOUR

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### Deprivation of Property Without Due Process of Law
### Procedural Due Process - 5th and 14th Amendments

### On Behalf of All Class Members

189.    Plaintiff realleges and incorporates herein by reference the allegations set forth in

the prior paragraphs herein.

39

190.    Plaintiff Paul Whaley brings this action on behalf of all owners of vehicles that were seized by these same Defendants under the Defendants' warrantless vehicle *seizure-for-profit and kickbacks* scheme, within the period of three (3) years immediately preceding the commencement of this action, those constituting the proposed "Class Members."

191.    At all times described herein, all Class Members were the holders of a protectible property interest in their respective motor vehicles, including their rights to: (a) own, (b) use, and (c) possess their respective vehicles.

192.    All of the Class Members had their vehicles seized, without warrants, by the Defendants, and were deprived of the use, possession, and/or ownership of their respective vehicles, under the Defendants' policies, practices, and procedures that are described herein above.

193.    Each of the Class Members was deprived of due process, any pre-seizure hearing, or any Constitutionally compliant post-seizure hearing, in violation of their respective rights under the 5th and 14th Amendments to the United States Constitution.

194.    As a result of the foregoing, each of the Class Members is entitled to obtain redress pursuant to 42 U.S.C. §1983 and to an award for compensatory damages, punitive damages, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988.

195.    Each of the Class Members is entitled to a monetary award for compensatory damages, and a money judgment for same, against all of the Defendants, jointly and severally.

196.    Each of the Class Members is entitled to a monetary award for punitive damages, and a money judgment for same, against the Defendants Michael Smith, Jerome Bonomo, Matthew K. Seridge, and "John Doe" Jemerson-Oliver, jointly and severally.

197.    Each of the Class Members is entitled to a monetary award for reasonable

attorneys' fees and costs, and a money judgment for same, against all of the Defendants, jointly

and severally.

## COUNT FIVE

### New York State Law Claim
### Conversion
### As Against Bonomo and Non-Stop Only

### On behalf of Plaintiff Paul Whaley Individually

198.    Plaintiff incorporates by reference the allegations set forth in the above

paragraphs, as if fully set forth herein.

199.    As described above, and at all times described herein, Plaintiff Paul Whaley was,

and remains, the owner of a 2007 Mercedes SL500 ("The Subject Vehicle"). As the owner of

The Subject Vehicle, at all times described herein, Plaintiff was, and remains, entitled to the use

and possession of same.

200.    On March 10, 2025, Defendants Non-Stop and Bonomo took physical possession

of The Subject Vehicle and thereafter retained exclusive possession of the Plaintiff's vehicle, to

the exclusion of the Plaintiff.

201.    Non-Stop has thereby unlawfully interfered with Plaintiff's right to own, use and

possess The Subject Vehicle by (a) taking physical possession of same, to the exclusion of the

Plaintiff, (b) thereafter retaining same, thereby continuing to deprive the Plaintiff of same on a

continuing basis (c) attaching one or more de facto ex parte liens upon The Subject Vehicle for

unauthorized charges for towing and storage, despite the fact that the Plaintiff never requested

that the Defendants perform any such towing or storage services, and (d) refusing to release it to

Plaintiff unless and until such unauthorized charges were paid.

202.    On April 15, 2025, Defendant Freeport's Hearing Officer rendered a decision

wherein he:

     (a)    Determined that Defendant Freeport was permitted to retain continuing possession of the vehicle until the towing and storage fees being demanded were paid;

     (b)    Directed that the vehicle must be released upon the payment of such towing and storage fees to either Freeport or Non-Stop; and

     (c)    Directed that the amount to be charged for such towing and storage not exceed **$760.37**, inclusive of all fees. [emphasis in original].

See Exhibit M.

203.    On May 9, 2025 the Plaintiff paid all sums which Freeport claimed to be owned from Plaintiff for any unpaid tickets which had been outstanding.

204.    After making payment of same,  Plaintiff attempt to secure the release of his vehicle from Defendant Non-Stop, who then refused to release same, unless the Plaintiff paid Non-Stop the amount of $643.00.

206.    Annexed hereto as Exhibit N is a paid receipt from Defendant Non-Stop, which reflects that he paid Non-Stop the sum of $643.00 to secure the release of his vehicle, as was demanded by Non-Stop.

207.    By these actions, Defendants Non-Stop and Bonomo have purposefully, knowingly, and/or intentionally exercised dominion and control over The Subject Vehicle, by wrongfully interfering with Plaintiff's rights to the use and possession of The Subject Vehicle.

208.    As the principal of Non-Stop, Defendant Bonomo supervised, directed Non-Stop's actions in seizing, retaining, attaching liens, and refusing to release The Subject Vehicle, all of which actions were untaken pursuant to practices, policies, and procedures created and approved by Defendant Bonomo.

209.    The Plaintiff has suffered compensable damages as a result of Said Defendants' conduct, in having been deprived of his use and possession of his vehicle for the entire time it was taken by Non-Stop and remained in Non-Stop's possession, and for amounts which Non-Stop extorted from the Plaintiff to secure its release.

210.    As a result of the foregoing, Plaintiff Paul Whaley is entitled to obtain redress pursuant to 42 U.S.C. §1983 and to an award for compensatory damages, punitive damages, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988.

210.    The Plaintiff is entitled to a monetary award for compensatory and punitive damages, and a money judgment for same, against Defendants Non-Stop and Jerome Bonomo, jointly and severally.

211.    The Plaintiff is entitled to a monetary award for reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988, and a money judgment for same, against Defendants Non-Stop and Jerome Bonomo, jointly and severally.

## COUNT SIX

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### Violation of the Takings Clause
### 5th Amendment

### On behalf of Plaintiff Paul Whaley, Individually

212.    Plaintiff realleges and incorporates by reference the allegations set forth in the prior paragraphs herein.

213.    The Defendants seized The Subject Vehicle, and thereafter deprived the Plaintiff of its use and possession on a continuing basis, for the purpose of extorting monies from the Plaintiff.

214.    By doing so, the Defendants successfully extorted monies from the Plaintiff, under threat of selling The Subject Vehicle.

215.    Such extractions of monies by the Defendants constituted takings within the meaning of the 5th Amendment to the United States Constitution.

216.    The Defendants extracted such monies from the Plaintiff for a public use.

217.    Such takings were executed in bad faith, for pretextual reasons, as an abuse of power.

218.    The Defendants were thus required to tender just compensation to the Plaintiff for such takings.

219.    Having failed to tender compensation for such taking, the Defendants have violated the Plaintiff's rights under the 5th Amendment to the United States Constitution.

220.    As a result of the foregoing, the Plaintiff is entitled to obtain redress pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, and is entitled to recover compensatory damages, punitive damages, attorneys' fees, and costs against the Defendants

## COUNT SEVEN

**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**
**· Violation of the Takings Clause**
**5th Amendment**

### On behalf of Plaintiff Class Members

221.    Plaintiff realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

222.    The Defendants seized the Plaintiff Class Members' vehicles, and thereafter deprived the Plaintiffs of their use and possession of their vehicles on a continuing basis, for the purpose of extorting monies from the Plaintiff Class Members.

223.    In hundreds of cases, the defendants physically took Plaintiff Class Members' vehicles, sold them, and shared the proceeds of such sales.

224.    Such actions constituted government takings within the meaning of the 5th Amendment to the United States Constitution.

225.    In other cases, the Defendants successfully extorted monies from the Plaintiff Class Members under the threat of selling their vehicles.

226.    Such extractions of monies by the Defendants also constituted takings within the meaning of the 5th Amendment to the United States Constitution.

227.    The Defendants took the Plaintiff Class Members' vehicles and monies for a public use, which was to derive the proceeds from the sales of such vehicles, or from the monies extorted from their owners.

228.    Such takings were executed in bad faith, for pretextual reasons, as an abuse of power.

229.    The defendants were thus required to tender just compensation to the Plaintiff Class Members for such takings.

230.    Having failed to tender compensation for such taking, the Defendants have violated the Plaintiffs' rights under the 5th Amendment to the United States Constitution.

231.    As a result of the foregoing, the Plaintiff Class Members are entitled to obtain redress pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, and to recover compensatory damages, punitive damages, attorneys' fees, and costs against the Defendants.

## COUNT EIGHT

### Conspiracy to Violate Civil Rights
### 42 U.S.C. §1983

### On Behalf of Plaintiff Paul Whaley

45

232.    Plaintiff realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

233.    The Defendants, Freeport, Michael Smith, Non-Stop, and Bonomo, entered into a conspiracy to violate the Plaintiff's civil rights, and proceeded to act upon such conspiracy, thereby violating the Plaintiff's civil rights.

234.    Defendants, Freeport, Michael Smith, Non-Stop, and Bonomo entered into an agreement under which they agreed to act in concert in a joint venture which would culminate in the violation of vehicle owners' rights.

235.    First, Defendants, Freeport, Michael Smith, Non-Stop, and Bonomo agreed that they would jointly seize and take possession of motor vehicles from their owners, without warrants. Each of the defendants acted upon this agreement, and they began making warrantless seizures of motor vehicles.

236.    Second, Defendants, Freeport, Michael Smith, Non-Stop, and Bonomo agreed to then deprive the owners of the use and possession of their vehicles on a continuing basis, for the purpose of extracting monies from the owners of such vehicles, which included monies that the owners of such vehicles would be required to pay to both Freeport, and Non-Stop, in the absence of which their vehicles would not be released to them. Each of the defendants acted upon this agreement, and they began withholding seized vehicles for the sole purpose of extracting monies from their owners.

237.    Third, Defendants, Freeport, Michael Smith, Non-Stop, and Bonomo agreed that they would jointly make demands for such payments, under threat that each vehicle owners' failure to pay such sums would result in their respective vehicle being "destroyed' or sold. Defendants Freeport and Smith acted upon this agreement, by sending letters to the owners of

seized vehicles telling them that if they failed to "reclaim" their vehicle (which would require payment of all monies demanded by the defendants) their vehicles would be "destroyed."

238.   Fourth, Defendants, Freeport, Michael Smith, Non-Stop, and Bonomo agreed that Non-Stop would pay Freeport a kickback of $300.00 for each such vehicle seized.

239.   The Defendants acted upon that agreement in that Non-Stop and Bonomo paid Freeport a kickback for each tow that defendants Freeport and Smith had directed, and Freeport accepted such kickbacks.

240.   Fifth, in exchange, Freeport agreed that it would authorize Non-Stop to withhold continuing possession of such seized vehicles unless and until their owners paid monies to Non-Stop for towing and storage services which the owners had never asked Non-Stop to provide.

241.   The Defendants acted upon that agreement whereby Freeport notified vehicle owners, in writing, that they were required to pay such towing and storage fees, and Non-Stop continued to deprive vehicle owners of their vehicles on a continuing basis unless and until they paid whatever sums Non-Stop demanded.

242.   Sixth, Defendants, Freeport, Michael Smith, Non-Stop, and Bonomo agreed that if the vehicle owners failed or refused to pay the sums the Defendants demanded, Defendants Freeport and Smith would authorize Non-Stop to sell the vehicles and retain the proceeds of such sales as its compensation for having towed and stored the respective vehicle at Freeport and Smith's directive. The Defendants acted upon that agreement by virtue of Freeport and Smith then issuing "Vehicle Release Authorizations," wherein they authorize Defendant Non-Stop to release each seized vehicle to itself, and concomitantly authorize Non-Stop to sell each vehicle and to retain the proceeds from such sales.

243.   The objective of the Defendants' agreement and joint enterprise was to monetize

their warrantless seizure of motor vehicles by using the seizure and withholding of vehicles as a means of extracting millions of dollars annually from the owners of such vehicles.

244.    The Defendants committed to, and began carrying out, overt acts under their Conspiracy upon Defendant Freeport and defendant Non-Stop entering a written agreement on May 24, 2021, which, among other things, provided for Non-Stop's (kickback) payment of $300.00 per tow to Defendant Freeport.

245.    Under such conspiracy, (a) the Defendants made warrantless seizures of approximately 5,000 vehicles, more than 3,000 of which are identified in Exhibit H, (b) sold more than 200 vehicles which were seized without warrants - See Exhibit C, and (c) Non-Stop has paid Freeport more than 1.8 million dollars in kickbacks, while having extracted millions more from the owners of vehicles seized under the Defendants' conspiracy.

246.    Under their conspiracy, the Defendants seized Plaintiff Paul Whaley's vehicle, withheld it from him to extort monies from him, and ultimately extorted him into paying $270.75 to Freeport and an additional $643.00 to Non-Stop, from which Non-Stop paid Freeport an additional $300.00 *kickback*.

247.    As a result of the foregoing, the Plaintiff is entitled to obtain redress pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, and is entitled to recover compensatory damages, punitive damages, attorneys' fees, and costs against the Defendants

## COUNT NINE

### Conspiracy to Violate Civil Rights

### 42 U.S.C. §1983

### On Behalf of All Class Members

248.    Plaintiff realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

249.    Under the Defendants' conspiracy, as described herein above, the Defendants seized approximately 5,000 motor vehicles from Plaintiff Class Members, and thereafter deprived Plaintiff Class Members of the use and possession of their vehicles for the purpose of extorting monies from them.

250.    Under the Defendants' conspiracy, as described herein above, the Defendants successfully extorted millions of dollars from the Plaintiff Class Members.

251.    Under the Defendants' conspiracy, as described herein above, the Defendants sold more than 200 vehicles that Plaintiff Class Members owned.

252.    As a result of the foregoing, the Plaintiff Class Members are entitled to obtain redress pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, and they are entitled to recover compensatory damages, punitive damages, attorneys' fees, and costs against the Defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff requests that the Court render judgment and award the Plaintiff and Class Members the following relief:

## COUNT ONE

### UNREASONABLE SEIZURE - 4TH AMENDMENT
42 U.S.C. §§1983, 1988)

### On Behalf of Plaintiff Paul Whaley

1.    For an award of compensatory damages, and a monetary judgment against all of the named Defendants jointly and severally, in the amount of $25,000 or in such an amount proven at trial;

2.    For an award of punitive damages, and a monetary judgment against Michael Smith, Jerome Bonomo, Matthew K. Seridge, and "John Doe" Jemerson-Oliver, jointly and severally, in the amount of $5,000,000.00 or in such an amount proven at trial;

3.    For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

4.    For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);

5.    Together with such other and further relief as the Court may deem appropriate.

## COUNT TWO

### UNREASONABLE SEIZURE - 4TH AMENDMENT
42 U.S.C. §§1983, 1988)

#### On Behalf of Plaintiff Class Members

1. For an award of compensatory damages, and a monetary judgment against all of the named Defendants jointly and severally, in the amount of $5,000,000.00 or in such an amount proven at trial;

2. For an award of punitive damages, and a monetary judgment against Michael Smith, Jerome Bonomo, Matthew K. Seridge, and "John Doe" Jemerson-Oliver, jointly and severally, in the amount of $25,000,000.00 or in such an amount proven at trial;

3. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

4. For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);

5. Together with such other and further relief as the Court may deem appropriate.

## COUNT THREE

### PROCEDURAL DUE PROCESS - 14TH AMENDMENT
42 U.S.C. §§1983, 1988)

#### On Behalf of Plaintiff Paul Whaley

1.    For an award of compensatory damages, and a monetary judgment against all of the named Defendants jointly and severally, in the amount of $25,000 or in such an amount proven at trial;

2.    For an award of punitive damages, and a monetary judgment against Michael Smith, Jerome Bonomo, Matthew K. Seridge, and "John Doe" Jemerson-Oliver, jointly and severally, in the amount of $5,000,000.00 or in such an amount proven at trial;

3.    For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

4.    For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);

5.    Together with such other and further relief as the Court may deem appropriate.

## COUNT FOUR

## PROCEDURAL DUE PROCESS - 14TH AMENDMENT
### 42 U.S.C. §§1983, 1988)

### On Behalf of Plaintiff Class Members

1.    For an award of compensatory damages, and a monetary judgment against all of the named Defendants jointly and severally, in the amount of $5,000,000.00 or in such an amount proven at trial;

2.    For an award of punitive damages, and a monetary judgment against Michael Smith, Jerome Bonomo, Matthew K. Seridge, and "John Doe" Jemerson-Oliver, jointly and severally, in the amount of $25,000,000.00 or in such an amount proven at trial;

3.    For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

4.    For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);

5.    Together with such other and further relief as the Court may deem appropriate.

**COUNT FIVE**

**NEW YORK STATE LAW**
Conversion

**On Behalf of Plaintiff Paul Whaley**

1. For an award of compensatory damages, and a monetary judgment against all of the named Defendants jointly and severally, in the amount of $25,000 or in such an amount proven at trial;

2. For an award of punitive damages, and a monetary judgment against Michael Smith, Jerome Bonomo, Matthew K. Seridge, and "John Doe" Jemerson-Oliver, jointly and severally, in the amount of $5,000,000.00 or in such an amount proven at trial;

3. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

4. For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);

5. Together with such other and further relief as the Court may deem appropriate.

54

## COUNT SIX

### TAKING CLAIM - 5TH AMENDMENT
42 U.S.C. §§1983, 1988)

### On Behalf of Plaintiff Paul Whaley

1.  For an award of compensatory damages, and a monetary judgment against all of the named Defendants jointly and severally, in the amount of $25,000 or in such an amount proven at trial;

2.  For an award of punitive damages, and a monetary judgment against Michael Smith, Jerome Bonomo, Matthew K. Seridge, and "John Doe" Jemerson-Oliver, jointly and severally, in the amount of $5,000,000.00 or in such an amount proven at trial;

3.  For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

4.  For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);

5.  Together with such other and further relief as the Court may deem appropriate.

## COUNT SEVEN

### TAKING CLAIM - 5TH AMENDMENT
42 U.S.C. §§1983, 1988)

#### On Behalf of Plaintiff Class Members

1.    For an award of compensatory damages, and a monetary judgment against all of the named Defendants jointly and severally, in the amount of $5,000,000.00 or in such an amount proven at trial;

2.    For an award of punitive damages, and a monetary judgment against Michael Smith, Jerome Bonomo, Matthew K. Seridge, and "John Doe" Jemerson-Oliver, jointly and severally, in the amount of $25,000,000.00 or in such an amount proven at trial;

3.    For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

4.    For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);

5.    Together with such other and further relief as the Court may deem appropriate.

## COUNT EIGHT

### Conspiracy to Violate Civil Rights
42 U.S.C. §§1983, 1988)

### On Behalf of Plaintiff Paul Whaley

1. For an award of compensatory damages, and a monetary judgment against all of the named Defendants jointly and severally, in the amount of $25,000 or in such an amount proven at trial;

2. For an award of punitive damages, and a monetary judgment against Michael Smith, Jerome Bonomo, Matthew K. Seridge, and "John Doe" Jemerson-Oliver, jointly and severally, in the amount of $5,000,000.00 or in such an amount proven at trial;

3. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

4. For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);

5. Together with such other and further relief as the Court may deem appropriate.

## COUNT NINE

### Conspiracy to Violate Civil Rights
42 U.S.C. §§1983, 1988)

### On Behalf of Plaintiff Class Members

1.    For an award of compensatory damages, and a monetary judgment against all of the named Defendants jointly and severally, in the amount of $5,000,000 or in such an amount proven at trial;

2.    For an award of punitive damages, and a monetary judgment against Michael Smith, Jerome Bonomo, Matthew K. Seridge, and "John Doe" Jemerson-Oliver, jointly and severally, in the amount of $25,000,000.00 or in such an amount proven at trial;

3.    For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

4.    For any and all expert fees incurred by the Plaintiff, pursuant to 42 U.S.C. §1988(c);

5.    Together with such other and further relief as the Court may deem appropriate.

Dated: Merrick, New York
        May 14, 2025

CAMPANELLI & ASSOCIATES, P.C.

By: /s/ Andrew J. Campanelli
*Attorneys for Plaintiffs*

Andrew J. Campanelli
1757 Merrick Ave, Suite 204
Merrick, NY 11566
516-746-1600
ajc@campanellipc.com